1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEAGUE OF UNITED LATIN
AMERICAN CITIZENS INC,

           Plaintiff,

      v.

NATIONAL LEAGUE OF LATIN
AMERICAN CITIZENS, et al.,

           Defendants.

Case No.  13-cv-04725-JSC

**ORDER RE: MOTIONS TO DISMISS**
Re: Dkt. Nos. 28, 29, 30, 31

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

      This trademark infringement/fraud action arises out of a dispute involving the membership of Plaintiff League of United Latin American Citizens Inc. ("LULAC").  LULAC alleges that after the individual defendants were expelled from LULAC they continued to hold themselves out as members of LULAC and created a rival organization which intentionally infringes on LULAC's trademarks.  Now pending before the Court are the motions of Defendants National League of Latin American Citizens ("NLLAC") and Bernardo Eureste to dismiss for lack of personal jurisdiction, and of individual Defendants Argentina and Angel Luevano to dismiss for failure to state a claim and to strike pursuant to California Code of Civil Procedure section 425.16, the anti-Strategic Lawsuits Against Public Participation statute.  Following oral argument on August 14, 2014, NLLAC sought to file an additional declaration in support of its motion.  The Court gave NLLAC permission to do so, and ruled that Plaintiff could submit additional evidence and argument in opposition, but it declined to do so. (Dkt. No. 43.)  After carefully considering the parties' written submissions and oral argument the Court GRANTS the motions to dismiss for lack of personal jurisdiction and GRANTS the Luevanos' motion to dismiss for failure to state a claim with leave to amend.

//

1

**ALLEGATIONS OF THE COMPLAINT**

2          LULAC is a Texas nonprofit and "the largest and oldest Latino membership based

3    organization in the United States."  (Dkt. No. 1 ¶ 9.)  It "asserts its advocacy by various means,

4    including but not limited to civil rights, voter rights and other types of litigation."  (*Id.* ¶ 22.)   It

5    owns several federally protected trademarks.  (*Id.* ¶¶ 10, 11, 12 and Exhs. 1-4.)  LULAC

6    "permanently removed" Defendants Bernardo Eureste, Angel Luevano and Argentina Luevano as

7    LULAC members in 2011 for violations of LULAC's constitution, protocol and by-laws.  (*Id.* ¶¶

8    15-17, 20.)  After they were so removed, the individual defendants incorporated Defendant

9    NLLAC in the state of Nevada.  (*Id.* ¶ 14-18.)

10          The Luevanos subsequently filed a lawsuit in California state court seeking to overturn

11   their expulsion.  (*Id.* at ¶¶ 20-21.)  Defendant Eureste "publicly supported" the Luevanos' efforts.

12   (*Id.* at ¶ 20.)  They also "have begun promoting the creation of 'NLLAC' and continue to hold

13   themselves out as members of LULAC, California and continue to fraudulently raise money and

14   advocate using the LULAC marks for their own personal gain."  (*Id.* ¶ 23.)  NLLAC attempts to

15   take LULAC's members by adopting LULAC's slogan: "continuing the legacy of 1929."  (*Id.* \

16   ¶ 2.)  "NLLAC has also adopted similar aspects of Plaintiff's Constitution and By-Laws as its

17   own including its membership/council structure."  (*Id.*)

18          Plaintiff makes federal claims for trademark infringement and false designation of origin,

19   as well as state law claims for common law trademark, unfair competition, fraud, conversion and

20   abuse of process. The Complaint does not distinguish among the defendants in each count;

21   instead, each count appears to be pled indiscriminately against "defendants."

22

**DISCUSSION**

23   **A.    The Motion to Dismiss for Lack of Personal Jurisdiction**

24          Defendants NLLAC and Eureste move to dismiss for lack of personal jurisdiction.  The

25   plaintiff bears the burden of proving that personal jurisdiction is appropriate.  *Love v. Assoc.*

26   *Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  "Where, as here, a motion to dismiss is

27   based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima

28   facie showing of jurisdictional facts.  Uncontroverted allegations in the complaint must be taken as

United States District Court
Northern District of California

1    true, and conflicts over statements contained in affidavits must be resolved in" the plaintiff's

2    favor. *Id.*

3          Since there is no applicable federal statute governing personal jurisdiction here, California

4    law applies. California's jurisdictional statute "is coextensive with federal due process

5    requirements." *Id.* at 609. Under those due process requirements, personal jurisdiction may be

6    based upon either "general" or "specific" jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*,

7    374 F.3d 797, 801 (9th Cir. 2004).

8          **1.      General Jurisdiction**

9          "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must

10   engage in 'continuous and systematic general business contacts,' that 'approximate physical

11   presence' in the forum state. This is an exacting standard, as it should be, because a finding of

12   general jurisdiction permits a defendant to be haled into court in the forum state to answer for any

13   of its activities anywhere in the world." *Id.* (citations omitted).

14         Plaintiff does not appear to allege and, in any event, has not come close to making a prima

15   facie showing, that either Eureste or NLLAC is subject to general jurisdiction in California. No

16   evidence, or even allegation in the Complaint or Plaintiff's opposition, contradicts Eureste's

17   affidavits. He attests that he lives in Texas and has never so much as visited California. His

18   alleged internet blog, "Voice of the Mainland," is insufficient to confer general jurisdiction in

19   California. *See Shymatta v. Papillon*, 2011 WL 1542145, at *3 (D. Idaho April 21, 2011) ("The

20   few district courts to have considered blogs specifically have found them insufficient to establish

21   general personal jurisdiction.").

22         As NLLAC's President, Eureste also attests that NLLAC does not own any real or personal

23   property in California, does not have a registered agent for service of process, nor any bank

24   accounts or even telephone numbers in California. Again, nothing in the record contradicts this

25   evidence. That NLLAC is an alleged "national" organization is of no moment. Having "national"

26   in the title of an entity's name does not constitute the "continuous and systematic general business

27   contacts," that "approximate physical presence" in the forum state.

28

United States District Court
Northern District of California

3

1    **2.    Specific Jurisdiction**

2        Even if there is no general jurisdiction, a court may have specific jurisdiction of a

3    defendant.  Specific jurisdiction exists if three prongs are satisfied:

4            1) The non-resident defendant must purposefully direct his activities
             or consummate some transaction with the forum or resident thereof;
5            or perform some act by which he purposefully avails himself of the
             privilege of conducting activities in the forum, thereby invoking the
6            benefits and protections of its laws;

7            (2) the claim must be one which arises out of or relates to the
             defendant's forum-related activities; and
8

9            (3) the exercise of jurisdiction must comport with fair play and
             substantial justice, i.e. it must be reasonable.

10   *Schwarzenegger*, 374 F.3d at 802.  The plaintiff has the burden of proving the first two prongs; if

11   it does so, the defendant must demonstrate that the court's exercise of personal jurisdiction would

12   be unreasonable.  *Id.*

13       Under the first prong, the court engages in either a "purposeful direction" or a "purposeful

14   availment" analysis.  *Id.*  Purposeful availment is generally employed in contract cases.  Under

15   that analysis, a "showing that a defendant purposefully availed himself of the privilege of doing

16   business in a forum state typically consists of evidence of the defendant's actions in the forum,

17   such as executing or performing a contract there.  By taking such actions, a defendant

18   'purposefully avails itself of the privilege of conducting activities within the forum State, thus

19   invoking the benefits and protections of its laws.' In return for these 'benefits and protections,' a

20   defendant must—as a quid pro quo—'submit to the burdens of litigation in that forum.'"  *Id.*

21       Tort cases, in contrast, employ the "purposeful direction" analysis.  *Id.*  Under that analysis

22   the trial court "inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum

23   state, applying an 'effects' test that focuses on the forum in which the defendant's actions were

24   felt, whether or not the actions themselves occurred within the forum."  *Yahoo! Inc. v. La Ligue*

25   *Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).  The "effects" test requires

26   that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at

27   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

28   state."  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

United States District Court
Northern District of California

4

1      Defendants NLLAC and Eureste move to dismiss on the ground that they have not

2   "purposefully availed" themselves of the privilege of conducting activities in California, that is,

3   that they have invoked the benefits and protections of California law.  (*See, e.g.*, Dkt. No. 29 at 7.)

4   The problem with this argument, however, is that, as explained above, "purposeful availment" is

5   the analysis applied to contract claims, not tort claims as are made in this case.  The Court will

6   nonetheless endeavor to engage in the appropriate purposeful direction analysis with the "effects"

7   test.

8                    **a.        Eureste**

9      Plaintiff contends that Eureste is subject to the jurisdiction of this Court notwithstanding

10   that he has never stepped foot in California because "his connection to NLLAC is quite extensive

11   and jurisdiction can be found by viewing the URL from the Nevada Secretary of state which is

12   offered as Exhibit 3."  (Dkt. No. 32 at 5.)  Exhibit 3 is a print out from SilverFlume, "Nevada's

13   Business Portal," and identifies information about NLLAC, including its registered agent in Las

14   Vegas, Nevada, and that it is registered as a Nevada corporation.  It also identifies Eureste as

15   holding several NLLAC offices and having a Texas address.  The exhibit, however, says nothing

16   about how Eureste in his individual capacity committed an intentional act directed at California

17   from which Plaintiff's claims arise.  *See Brayton Purcell LLP*, 606 F.3d at 1128.

18      Plaintiff also asserts that Eureste's blog, "Voice of the Mainland," reveals his "obsession

19   with causing harm to Plaintiff.  He writes about LULAC constantly and cannot seem to get over

20   the fact that he was expelled from" LULAC.  (Dkt. No. 32 at 5.)  Again, there is no explanation as

21   to how this allegation—which does not appear in the Complaint nor in a declaration—constitutes

22   an intentional act directed at California, especially since LULAC is a Texas corporation

23   headquartered outside of California.  The record is also unclear as to whether Plaintiff is accusing

24   Eureste of engaging in trademark infringement through his blog; there is no such allegation in the

25   Complaint and, of course, simply writing about another entity is not trademark infringement.  But

26   to the extent Plaintiff contends that Eureste's blog activity somehow makes him subject to

27   jurisdiction in California, his contention is contrary to the law.  *See Cybersell, Inc. v. Cybersell,*

28   *Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997) (holding that operation of passive website that did

United States District Court
Northern District of California

1   nothing to encourage forum residents to access its cite was not sufficient to confer specific

2   jurisdiction); *Shymatta,* 2011 WL 1542145 at *4-5 (holding that the fact that a website was

3   accessible in Idaho does not constitute an intentional act aimed at Idaho sufficient to confer

4   specific jurisdiction).  Eureste's alleged blog attack on Plaintiff's counsel is similarly insufficient.

5   First, it is not alleged in the Complaint.  Second, even if it was, it is not the basis for any of

6   Plaintiff's claims; Eureste cannot have infringed Plaintiff's trademarks by criticizing Plaintiff's

7   counsel on the internet.  Thus, even if the internet criticism of counsel is the "intentional act"

8   directed at California, it does not meet the second prong of the effects test—that the claim arise

9   from conduct directed at California.

10      Next, Plaintiff makes the conclusory allegation that Eureste "was instrumental in

11   expanding Defendant NLLAC into California."  (Dkt. No. 32 at 6.)  It explains that Eureste

12   provided "guidance and advice in the Luevanos' suit against Plaintiff in 2006 and 2010" and "has

13   shown an interest in the 2006 and 2010 lawsuits filed by Defendant Angel Luevano."  (*Id* . at 7.)

14   Plaintiff cites no case, however, and the Court is not aware of any, that suggests that taking an

15   interest in a California lawsuit is sufficient to confer jurisdiction in California over claims for

16   trademark infringement and fraud, among others.  Plaintiff also attaches to its opposition what is

17   purported to be a print-out from Eureste's blog in which he advises that NLLAC has already

18   assigned a state director for California.  That NLLAC has a California state director, however,

19   does not mean that Eureste is an individual engaged in conduct that subjects him to lawsuit in

20   California; indeed, this is just a different version of Plaintiff's argument that because NLLAC is a

21   national organization, Eureste, as its director, must as an individual be subject to jurisdiction in

22   every state.  Again, Plaintiff does not cite any caselaw to support its expansive theory of personal

23   jurisdiction.  Nor does Plaintiff offer any declarations in opposition to Eureste's motion or ask for

24   jurisdictional discovery.  As Plaintiff has not met its burden of establishing personal jurisdiction

25   over Eureste, his motion to dismiss is granted.

26          **b.      NLLAC**

27      Plaintiff's trademark infringement claims allege that NLLAC's name and its "use of the

28   slogan 'continuing the legacy of 1929'" is likely to confuse consumers that NLLAC is affiliated

United States District Court
Northern District of California

United States District Court
Northern District of California

1   with LULAC.  (Dkt. No. 1 ¶ 27.)  NLLAC responds that it is not subject to suit here because it

2   does not have any contacts with California.  With respect to NLLAC's conduct in or directed at

3   California, the Complaint alleges that defendant Angel Luevano was the NLLAC California

4   director, which supports an inference that NLLAC was operating in California.  (Dkt. No. 1 at ¶

5   16.)  In support of its motion to dismiss, however, NLLAC offers the declarations of its President,

6   Bernard Eureste.[1]  He attests that NLLAC does not conduct any activities in California, and

7   specifically denies that defendant Angel Luevano took the office of NLLAC California director;

8   instead, he declares that NLLAC "has no officers or directors of any kind in the state of

9   California."  (Dkt. No. 44.)  The question, then, is whether Plaintiff has submitted evidence

10  sufficient to contradict NLLAC's declarations;  if so, those conflicts must be resolved in Plaintiff's

11  favor.  *See Love*, 611 F.3d at 608.

12          Plaintiff has submitted a purported blurb from what Plaintiff alleges is Eureste's blog

13  "Voice of the Mainland."  (Dkt. No. 32-1.) The entry is titled: "NLLAC Looking for State

14  Directors & Councils."  Farther down it states that NLLAC "is looking for leaders who would

15  assume the role of interim state director of the respective state of residence of the volunteer, one

16  state director per state."  Following the link to the state director application the web entry states:

17  "California has been assigned" as well as the "Vice President for the Far West."  *Id.*

18          The first question is whether the web page is admissible.  On the one hand, Plaintiff does

19  not authenticate the web page by declaration or otherwise.  NLLAC, however, does not dispute

20  that it made the web posting through its President, Eureste.  There is also a hearsay issue.  "Screen

21  shots of internet web pages are not usually admissible to prove the truth of statements contained

22  therein."  *Ponds v. Veterans Medical Research Foundation*, 2013 WL 607847, at *3 n.1 (S.D. Cal.

23  Feb. 15, 2013); *see also Bauman v. DaimlerChrylser AG*, 2005 WL 3157472, at *10 n.5 (N.D.

24  Cal. Nov. 22, 2005) (noting that web pages provided only unauthenticated hearsay).  The blog

25  statement—NLLAC has filled its interim California director—is being offered for the truth;

26

27  [1] Following the hearing on August 21, 2014, Defendants asked for permission to file a
    supplemental declaration in support of their motion.  The Court granted the request, and gave
28  Plaintiff the opportunity to file a response, including any additional evidence.  (Dkt. No. 43.)
    Plaintiff chose not to file anything further.

7

1    however, the statement was made by NLLAC, a party opponent, and therefore an exception to the

2    hearsay rule applies.  *See* Fed. R. Evid. 801(d)(2)(A).

3        The next question is whether the fact that NLLAC filled its interim California state director

4    position in October 2011 is sufficient to confer personal jurisdiction over NLLAC for Plaintiff's

5    trademark claims.  It is not.  Plaintiff must show that NLLAC (1) committed an intentional act, (2)

6    expressly aimed at California, (3) causing harm that NLLAC knows is likely to be suffered in

7    California.  *See Brayton Purcell LLP*, 606 F.3d at 1128.  For this trademark case, that intentional

8    act would be using the NLLAC mark and the confusingly similar slogan in California.  But

9    Eureste attests that NLLAC has not conducted any activities in California and Plaintiff does not

10   offer any evidence to refute that assertion.  NLLAC could have filled an interim state director

11   position and then, for whatever reason, not conducted any activities in California.  Thus, while the

12   Court must resolve any disputes in the evidence against NLLAC, on the present record there is no

13   dispute with regard to NLLAC's use of its mark in (or specifically directed at) California.

14       Plaintiff's insistence that the Luevanos held themselves out as LULAC officers *after* they

15   had been terminated from LULAC is insufficient to confer personal jurisdiction over NLLAC.

16   The relevant conduct is NLLAC's.  Despite the nearly hundred pages of attachments to the

17   Complaint, and the further attachments to Plaintiff's opposition, there is nothing in the evidentiary

18   record that contradicts the evidence that NLLAC has not operated in California; in other words, it

19   has not used the mark in California and therefore Plaintiff's trademark claims do not arise from an

20   intentional act directed at California.  As Plaintiff has not met its burden of establishing personal

21   jurisdiction of NLLAC, its motion, too, must be granted.

22   **B.    The Luevanos' Motion to Strike**

23       California's anti-SLAPP statute provides "for the early dismissal of unmeritorious claims

24   filed to interfere with the valid exercise of the constitutional rights of freedom of speech and

25   petition for the redress of grievances."  *Greater Los Angeles Agency on Deafness, Inc. v. Cable*

26   *News Network, Inc.*, 742 F.3d 414, 421 (9th Cir. 2014) (quoting *Club Members for an Honest*

27   *Election v. Sierra Club*, 45 Cal. 4th 309 (2008)).  To determine whether a claim should be

28   stricken, the Court engages in a two-step analysis.  First, the Court determines whether the

United States District Court
Northern District of California

8

1    defendants (here, the Luevanos) have made a prima facie showing that their challenged actions

2    arise from conduct in furtherance of the exercise of their right to free speech. *Id.* at 422.  If this

3    prima facie showing is made, the burden moves to Plaintiff to establish "by competent evidence, a

4    probability that it will prevail on [the challenged] claims." *Id.*

5         The Luevanos appear to contend that each and every "count" arises from protected activity

6    and are all therefore covered by the SLAPP statute.  Not so.  The anti-SLAPP statute does not

7    apply to federal claims in federal court. *See Garcia v. Allstate, Bulletin Displays, LLC*, 448

8    F.Supp.2d 1172, 1180 (C.D. Cal. 2006).  Nor have the Luevanos established that the unfair

9    competition and fraud claims arise from protected speech, in part because, as is discussed below, it

10   is difficult to discern from the Complaint precisely what conduct Plaintiff challenges.  Should

11   Plaintiff's amended complaint reveal that the counts are indeed covered by the anti-SLAPP statute,

12   the Luevanos may renew their anti-SLAPP motion as to those counts.

13        The result is different for the abuse of process count.  Plaintiff alleges that the Luevanos

14   filed a lawsuit challenging their removal from LULAC without a basis to do so.  (Dkt. No. 1 ¶ 72.)

15   Claims based on "communicative conduct such as the filing, funding, and prosecution of a civil

16   action" are covered by the anti-SLAPP statute. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2005).

17   Thus, the claim for abuse of process is covered by the anti-SLAPP statute. *See Flores v. Emerich*

18   *& Fike*, 385 Fed.Appx. 728, 732 (9th Cir. June 29, 2010) (unpublished) (citing *Siam v. Kizilbash*,

19   130 Cal.App.4th 1563, 1570 (2005)); *see also Smith v. Fireside Thrift Co*., 2007 WL 2729329 * 3

20   (N.D. Cal. Sept. 18, 2007) (holding that abuse of process claim arising from defendant having

21   filed suit against plaintiff, failing to serve plaintiff, and then filing false proof of service was

22   communicative conduct covered by the anti-SLAPP statute).  Plaintiff therefore bears the burden

23   of demonstrating "that the complaint is legally sufficient and supported by a prima facie showing

24   of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

25   *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (internal quotation marks

26   and citation omitted).

27        To prevail on a California state law claim for abuse of process, a litigant must establish

28   that the defendant "(1) contemplated an ulterior motive in using the process, and (2) committed a

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    willful act in the use of the process not proper in the regular conduct of the proceedings."

2    *Rusheen*, 37 Cal. 4th at 1057.  Plaintiff's opposition does not even attempt to explain how these

3    elements are satisfied, or even likely to be satisfied; instead, Plaintiff merely argues that the

4    Luevanos' lawsuit was dismissed with prejudice and no appeal was filed.  Losing a lawsuit is not

5    the standard for an abuse of process claim; if it were, nearly every lawsuit would spawn a follow-

6    up lawsuit for abuse of process.  As Plaintiff has not made a prima facie showing of facts

7    sufficient to support judgment in its favor on the abuse of process claim, the anti-SLAPP motion

8    to strike the claim must be granted.

9    **C.       The Luevanos' Motion to Dismiss**

10           The Luevano defendants also move to dismiss the entire Complaint against them for failure

11   to state a claim.  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

12   challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a

13   claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

14   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

15   draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

16   plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

17   possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

18   (internal citations omitted).  Under Federal Rule of Civil Procedure 8(a)(2), a party is required to

19   only make "a short and plain statement of the claim showing that the pleader is entitled to relief, in

20   order to give the defendant fair notice of what the claim is and the grounds upon which it rests."

21   *Twombly*, 550 U.S. at 555  (internal citations and quotations omitted).

22           For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in

23   the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

24   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

25   However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

26   plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

27   and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

28   *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  "Determining whether a

1    complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

2    reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

3         The Complaint fails to state a claim because it is replete with conclusory allegations and

4    does not distinguish among defendants.  Plaintiff fails to identify which defendant is sued under

5    which count and for which conduct; instead, each count merely discusses "defendants'" conduct.

6    Such generic allegations deprive each defendant "a fair and meaningful opportunity to defend

7    itself." *Powell v. Residential Mortg. Capital*, 2010 WL 2133011, at *3 (N.D. Cal. May 24, 2010).

8         The Complaint also lacks sufficient factual allegations to give rise to a plausible inference

9    of liability as to each defendant.  For example, Plaintiff alleges that the individual defendants,

10   without authorization from Plaintiff LULAC, continued to use the LULAC mark even after they

11   had been removed from the organization.  (Dkt. No. 1 ¶ 23.)  The Complaint then refers to

12   Exhibits 7 and 8 of the Complaint.  Exhibit 7 appears to be a blog post referring to the

13   incorporation of "Texas LULAC."  (*Id.* at 39.)  It mentions several officers of Texas LULAC, but

14   none is either Luevano defendant.  It does recount how the Luevanos were removed from their

15   positions with LULAC, but it is not obvious how such a statement would constitute trademark

16   infringement by the Luevanos.  Exhibit 8 is an email that does not appear to be to or from either

17   Luevano defendant and, again, is discussing Texas LULAC.  Thus, it is unclear how Exhibits 7 or

18   8 fit into Plaintiff's theory of liability by the Luevanos.

19        Plaintiff also attached to the Complaint unidentified exhibits that involve an entity entitled

20   "the California LULAC Institute" with which the Luevanos appear to have been involved, but the

21   exhibits appear to be dated from 2009 and 2010—before the Luevanos were removed from

22   LULAC.  In sum, the Complaint does not adequately explain what the Luevanos did that Plaintiff

23   contends was unlawful.

24        The fraud claim fails for the additional reason that it does not meet the heightened pleading

25   standard of Federal Rule of Civil Procedure 9(b).  The Complaint appears to refer to several

26   different fraudulent schemes, but Plaintiff fails to plead the required "time, place and specific

27   content of the false representations as well as the identities of the parties to the misrepresentation."

28   *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004) (internal citation and quotation

*United States District Court*
*Northern District of California*

11

1   marks omitted).  For example, Plaintiff alleges that "Defendants" created at least three non-profit

2   corporations to collect funds for LULAC, and that "Defendants" misappropriated the funds for

3   their own purpose.  (Dkt. No. 1 ¶ 57.)  What non-profit corporations?  What did each named

4   defendant do to raise the funds?  When did they raise the funds?  What did they say that was a

5   misrepresentation?  Plaintiff also refers to a fraud against the Oakland Airport Hilton (*id.* ¶ 58),

6   but as the Hilton is not a plaintiff it is unclear why "Defendants" allegedly defrauding the Hilton is

7   a claim that may be brought by Plaintiff.  And Plaintiff refers to "Defendants" engaging in a

8   solicitation of funds through the California LULAC Institute for the Spring 2010 California State

9   LULAC Convention, but that there has never been an accounting.  (*Id.* 59.)  What is the fraud

10   here, who was defrauded, and when?

11          Accordingly, the remaining claims against the Luevanos shall be dismissed with leave to

12   amend.  The amended complaint shall specify which defendant is sued under each count, and

13   make factual allegations as to the conduct of each defendant relevant to each specific count.  For

14   the fraud claim, Plaintiff must also satisfy the heightened pleading requirements of Federal Rule of

15   Civil Procedure 9(b).

16                                              **CONCLUSION**

17          Plaintiff bears the burden of proving personal jurisdiction.  It has not done so as to

18   Defendants NLLAC and Eureste; accordingly, their motions to dismiss for lack of personal

19   jurisdiction are GRANTED.  As the Luevano defendants have met their burden of proving that the

20   abuse of process claim is covered by the anti-SLAPP statute, and Plaintiff has not submitted facts,

21   or even argument, sufficient to sustain judgment in its favor on that claim, the motion to strike the

22   abuse of process claim is also GRANTED.  The remaining claims against the Luevanos are

23   dismissed for failure to state a claim.  Plaintiff may file an amended complaint within 20 days of

24   this Order.  Failure to file a timely amended complaint will mean the claims are dismissed with

25   prejudice.  As explained at oral argument, following the filing of the amended complaint, the case

26   will be stayed to enable the remaining parties to engage in court-sponsored mediation.  A further

27   case management conference is scheduled for December 11, 2014 at 1:30 p.m.

28

United States District Court
Northern District of California

1          The case is referred to the Court's ADR program for a mediation to take place within 90

2    days.  This Order disposes of Docket Nos. 28, 29, 30 and 31.

3          **IT IS SO ORDERED.**

4    Dated: September 11, 2014

5    _____
     JACQUELINE SCOTT CORLEY

6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13